FILED
2012 DEC 18 AM 11: 37
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

CR12-1191

| UNITED STATES OF AMERICA, | ) No. CR _____ |
|---|---|
| Plaintiff, | ) I N F O R M A T I O N |
| v. | ) [18 U.S.C. § 1347: Health Care Fraud; 18 U.S.C. § 2(b): Causing an Act To Be Done] |
| PEZHMAN EBRAHIMZADEH, M.D., aka "Pez Abrahams," | ) |
| Defendant. | ) |

The United States Attorney charges:

[18 U.S.C. §§ 1347, 2(b)]

A.  INTRODUCTORY ALLEGATIONS

At all times relevant to this Information:

The Defendant and the Procedures Billed to Medicare

1.  Defendant PEZHMAN EBRAHIMZADEH, M.D., also known as ("aka") Pez Abrahams ("ABRAHAMS"), was a general practice physician who owned and operated Winnetka Medical Group doing business as ("dba") Health & Beauty Clinic ("Winnetka Medical Group"), located at 6742 Winnetka Avenue, Winnetka, California, within the Central District of California. Defendant ABRAHAMS advertised and operated Winnetka Medical Group as a provider of

skin and other cosmetic treatments, including radio frequency laser, varicose veins, ultrasounds, and liposuction procedures, and general practice medicine.

2.  Defendant ABRAHAMS became a Medicare provider, and was issued a Medicare provider number, effective on or about December 30, 2006.

3.  At the Winnetka Medical Group, defendant ABRAHAMS billed Medicare for providing medical services to Medicare beneficiaries, including revascularization, bone tumor ablation, and placement of a radiotherapy catheter in the breast (the "subject procedures").

4.  Revascularization is a procedure used to treat blocked arteries by inserting a catheter into the femoral artery without any incision. The catheter is guided to the blockage and is then used to open the artery.

5.  Bone tumor ablation is a procedure in which a physician, using digital imagery as a guide, inserts a needle into a bone tumor. From the tip of the needle, radio frequency energy is transmitted into the tumor where it produces heat and, if successful, kills the tumor cells.

6.  The placement of a radiotherapy catheter in the breast is a procedure performed after a partial mastectomy or lumpectomy. The procedure involves the insertion of a catheter into the breast. A balloon is inflated at the end of the catheter, which delivers radiation to the breast as part of treatment for breast cancer.

//
//

The Medicare Program

7. Medicare was a federal health care benefit program, affecting commerce, that provided benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency within the United States Department of Health and Human Services.

8. Individuals who qualified for Medicare benefits were commonly referred to as Medicare "beneficiaries." Each beneficiary was given a Health Identification Card Number ("HICN") unique to that beneficiary.

9. Physicians and other health care providers that provided services that were reimbursed by Medicare were referred to as "providers."

10. Medicare "Part B" covers certain items and medical services provided to beneficiaries on an outpatient basis. To become eligible to participate in Medicare, Medicare required physicians to submit an application in which the physician agreed to comply with all Medicare-related laws and regulations. If Medicare approved the application, Medicare assigned the physician an identifying number, originally known as a Unique Physician's Identification Number ("UPIN") or National Provider Identifier ("NPI"), which enabled the physician to submit claims to Medicare for reimbursement for services provided to Medicare beneficiaries.

11. Medicare required a claim for Medicare reimbursement of physician services to set forth, among other things, the beneficiary's name and HICN, the type of service provided to the

beneficiary, the date that the service was provided, the beneficiary's diagnosis, and the name and Unique Physician Identification Number ("UPIN") and/or the National Provider Identifier ("NPI") of the physician who performed the service.

12. Medicare reimbursed physicians only for services that were medically necessary to the treatment of a beneficiary's illness and that were provided in accordance with Medicare regulations and guidelines that governed whether a particular service or procedure would be reimbursed by Medicare.

13. To bill Medicare, a physician submitted a claim (Form 1500), which Medicare required to be truthful, complete, and not misleading. In addition, when submitting a claim to Medicare, a physician certified that the services covered by the claim were medically necessary.

B.  THE FRAUDULENT SCHEME

14. Beginning in or about September 2008, and continuing through in or about April 2012, in Los Angeles County, within the Central District of California, and elsewhere, defendant ABRAHAMS, knowingly, willfully, and with intent to defraud, executed and attempted to execute a scheme and artifice: (a) to defraud a health care benefit program, namely Medicare, as to material matters in connection with the delivery of and payment for health care benefits, items, and services; and (b) to obtain money from Medicare by means of material false and fraudulent pretenses and representations and the concealment of material facts in connection with the delivery of and payment for health care benefits, items, and services.

15. The fraudulent scheme operated, in substance, in the following manner:

    a. Defendant ABRAHAMS owned and operated the Winnetka Medical Group where he worked as Winnetka Medical Group's only physician.

    b. Defendant ABRAHAMS obtained beneficiaries' identifying information -- including their name, date of birth, and HICN -- needed to bill Medicare when beneficiaries completed paperwork before receiving treatments at Winnetka Medical Group and through other means.

    c. Defendant ABRAHAMS then submitted and caused to be submitted false and fraudulent claims to Medicare for purportedly performing the subject procedures when in fact, and as defendant ABRAHAMS well knew, he had not provided the subject procedures to the beneficiaries. In many instances, defendant ABRAHAMS billed Medicare for performing more than one of the subject procedures on Medicare beneficiaries.

    d. In at least one instance, defendant ABRAHAMS submitted claims to Medicare for purportedly performing a revascularization, ablation of a bone tumor, and placement of radiotherapy catheter in the breast on dates that were months after a beneficiary had died.

    e. Between in or about September 2008 and in or about May 2012, defendant Abrahams submitted and caused to be submitted false and fraudulent claims to Medicare for performing the subject procedures, and based on these claims Medicare paid Winnetka Medical Group approximately $3,038,757.

//

5

C.  EXECUTION OF THE FRAUDULENT SCHEME

16.  On or about December 14, 2011, within the Central District of California and elsewhere, defendant ABRAHAMS, for the purpose of executing and attempting to execute the fraudulent scheme described above, knowingly and willfully submitted and caused to be submitted to Medicare claim number 551111348671430, which was a false and fraudulent claim for payment in the amount of $13,007.43 for revascularization services purportedly provided to beneficiary S.G.

ANDRÉ BIROTTE JR.
United States Attorney

*/s/ R. E. Dugdale*

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

RICHARD M. ROBINSON
Assistant United States Attorney
Chief, Major Frauds Section

CONSUELO S. WOODHEAD
Assistant United States Attorney
Deputy Chief, Major Frauds Section

GRANT B. GELBERG
Special Assistant
United States Attorney
Major Frauds Section